UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RESAT OTUS NURI,<br><br>Defendant. | Case No. 15-CR-00808-LHK-1<br><br>**ORDER REGARDING E.G.'S RESTITUTION AWARD** |

On March 11, 2016, the parties filed a joint sentencing memorandum in advance of Defendant's March 16, 2016 sentencing. ECF No. 115. A dispute in the sentencing memorandum is how much restitution should be awarded to E.G. Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds that E.G. should be awarded $93,239.90 in restitution.

## I. BACKGROUND

The parties agree that, from 2014 to 2015, E.G. and Defendant "made real efforts to build a company with the funds . . . obtained from E.G." ECF No. 115 at 21. This company—Quicktext—built "[a] real product," although "the product did not generate the market attention that . . . [D]efendant had promised." *Id.*

1

Case No. 12-CR-00808-LHK-1
ORDER REGARDING E.G.'S RESTITUTION AWARD

However, the Government argues that a significant amount of E.G.'s money was used not "for the benefit of the company," but for Defendant's "personal use." *Id.* at 22. Specifically, the Government points to certain checks made payable to Defendant from July to October 2014, which add up to $59.525.44. *Id.* In addition, the Government points to certain non-business expenses that were charged by Defendant to Quicktext's US Bank account from January to March 2015, which add up to $33.714.46. *Id.* Together, these checks and expenses add up to $93,239.90, which the Government contends is the amount that should be awarded as restitution to E.G. Defendant contests this figure, and avers that E.G.'s restitution award should be no greater than $7,000. *Id.* at 24.

## II.   LEGAL FRAMEWORK

Factual findings regarding a district court's restitution order must be "established by a preponderance of the evidence." *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008). "A restitution order is reviewed for abuse of discretion, provided that it is within the bounds of the statutory framework." *United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999). "Factual findings supporting" the Court's restitution analysis "are reviewed for clear error." *Id.*

The parties agree that E.G. may not recover his full investment in Quicktext, but only the part of E.G.'s investment which was used for Defendant's benefit. Case law is consistent with this approach. As the Seventh Circuit observed in *United States v. Swanson*, 394 F.3d 520, 528 (7th Cir. 2005), "[t]o the extent that the acquisition of these commercial entities added value to the respective victims' businesses, that value must be deducted from the restitution award." The Ninth Circuit applied a similar approach in *United States v. Phillips*, 134 F. App'x 149, 149 (9th Cir. 2005), where it held that a restitution award must be limited based on the value of a benefit that was provided or an asset that was returned to the victim.

## III.   DISCUSSION

With this standard of review and legal framework in mind, the Court concurs with the Government's assessment that E.G. should be awarded $93,239.90 in restitution. With respect to the checks in question, the Court has reviewed all 16 of the checks at issue. Each of these checks

2

Case No. 12-CR-00808-LHK-1
ORDER REGARDING E.G.'S RESTITUTION AWARD

was written from Quicktext's checking account and made payable to Defendant. ECF No. 118-2. Together, these checks total $59.525.44, which is consistent with the Government's calculation. Defendant has offered no legitimate business explanation for why these checks were made payable to Defendant. Moreover, these checks were written about once a week for about $3,500 each time. On multiple occasions, multiple checks were made payable to Defendant on the same day. Under these circumstances, the Court finds by a preponderance of the evidence that Defendant used these checks for personal purposes.

Next, with respect to the expenses charged to Quicktext's US Bank account, ECF No. 118-3, the Court agrees that these expenses do not appear to be legitimate business expenses. By way of example, these expenses include: a $49.15 bill at Wingstop, incurred on January 12, 2015; a $65.39 bill at Wine Shop, incurred on January 16, 2015; a $12.48 bill at Los Gatos Cigar, incurred on February 9, 2015; a $4.88 bill at Yumi Yogurt, incurred on March 19, 2015; a $448.93 bill at Men's Wearhouse, incurred on March 23, 2015; and a $131.00 bill for DirectTV, incurred on March 24, 2015. Moreover, Defendant charged grocery and gas expenses, on a weekly basis, to Quicktext's US Bank account, as illustrated by the Table below:

| Date | Description | Expense |
|---|---|---|
| January 8, 2015 | Chevron – Gas | $52.00 |
| January 13, 2015 | Safeway – Grocery | $231.87 |
| January 20, 2015 | Safeway – Grocery | $60.28 |
| January 26, 2015 | Walgreens – Grocery | $16.22 |
| February 4, 2015 | Safeway – Grocery | $35.63 |
| February 9, 2015 | ARCO – Gas | $51.05 |
| February 17, 2015 | Chevron – Gas | $56.50 |
| March 10, 2015 | Eagle Gasoline – Gas | $83.20 |
| March 16, 2015 | Chevron – Gas | $69.20 |
| March 18, 2015 | Safeway – Grocery | $216.28 |

3

Case No. 12-CR-00808-LHK-1
ORDER REGARDING E.G.'S RESTITUTION AWARD

| March 23, 2015 | Eagle Gasoline – Gas | $73.00 |
| March 26, 2015 | Chevron – Gas | $83.00 |

Furthermore, these expenses also include numerous dining and entertainment expenses, including a $275.14 bill at Barracuda Restaurant, incurred on February 4, 2015; a $315.00 bill at Ryoko's Restaurant, incurred on March 2, 2015; and a $405.00 bill at Ryoko's Restaurant, incurred on March 9, 2015. Finally, these non-business expenses also include numerous unexplained withdrawals from various ATM machines throughout the Bay Area, including a $5,000 withdrawal on February 13, 2015 and a $7,000 withdrawal on March 2, 2015.[1] Together, these non-business expenses total $33,714.46, a figure that is again consistent with the Government's calculation. As with the checks that the Court previously described, Defendant does not argue that these expenses were legitimate business expenses, and the Court finds that these expenses were not incurred for Quicktext's benefit.

Defendant appears to make only two arguments in disputing E.G. restitution award. First, Defendant states that a cash withdrawal on March 4, 2015 for $10,950.86, ECF No. 77-1 at 1, which was identified in the criminal complaint, was actually used to "pay down corporate debt," ECF No. 115 at 24. Second, Defendant argues that Quicktext owed Defendant at least $100,000 in out-of-pocket expenses and unpaid salary. *Id.*

Both of Defendant's arguments are unavailing. The Government did not include any checks or expenses from March 4, 2015 in its restitution calculation, nor did the Government include a check or an expense totaling $10,950.86 in its calculation. Indeed, the largest single check amount is a $6,500 check written by Quicktext to Defendant on August 17, 2014, and the largest single expense is a $7,000 ATM withdrawal on March 2, 2015.

As to Defendant's unpaid salary argument, the only support Defendant provides is a March 10, 2016 declaration from Stephen Gross ("Gross"). Gross is a longtime personal friend of

---

[1] The Government has identified a litany of other large, unexplained ATM withdrawals from Quicktext's bank account. Moreover, Quicktext also incurred hundreds of dollars in overdraft fees for Defendant's numerous ATM withdrawals.

4
Case No. 12-CR-00808-LHK-1
ORDER REGARDING E.G.'S RESTITUTION AWARD

Defendant, and his declaration provides little detail on how Gross actually arrived at Defendant's unpaid salary calculation. Gross, for instance, estimates that Defendant received a salary of $72,916.69 from May to October 2014. ECF No. 117 at 2. However, Gross himself did not become involved with Quicktext until "August or September 2014," ECF No. 118-1 at 2, and Gross provides no explanation as to how he would have had personal knowledge of Defendant's salary prior to Gross's involvement with Quicktext.

In addition, in an interview that Gross gave to Government officials on July 15, 2015, Gross stated that "he was 'pissed' that [Defendant] [had] withdr[awn] . . . $7,000" from Quicktext's bank account on March 2, 2015—the same $7,000 cash withdrawal referenced above. *Id.* at 4. Gross stated that Defendant's actions were "absolutely annoying, foolish and stupid," and in complete contravention with Quicktext's business plan at the time, which the company had agreed to just days beforehand. *Id.* When Gross confronted Defendant about this $7,000 expense, Defendant "stated [that] he needed this amount for personal expenses." *Id.* at 4. Thus, Gross's own statements and interviews reveal that some of the expenses charged to Quicktext's US Bank account—including the largest single withdrawal, for $7,000, on March 2, 2015—were for Defendant's own personal use and not for Quicktext's benefit.

As a final point, even if it were true that Defendant stopped receiving a salary from Quicktext at some point in time, this fact alone does not give Defendant license to use Quicktext's banking accounts for his own personal benefit, as Defendant did here.

In sum, Defendant's arguments lack merit and, consistent with the Government's calculations, the Court finds that E.G. should be awarded $93,239.90 in restitution.

**IT IS SO ORDERED.**

Dated: March 16, 2016

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

5
Case No. 12-CR-00808-LHK-1
ORDER REGARDING E.G.'S RESTITUTION AWARD